IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JANICHOLAS V. SCOTT                                                                          PLAINTIFF

v.                                                                                   No. 4:21CV42-GHD-RP

MDOC, ET AL.                                                                              DEFENDANTS

MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Janicholas V. Scott, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants did not quarantine fifty or so inmates who were transferred to the Carroll Montgomery Regional Correctional Facility ("Carroll Montgomery RCF"), which resulted in the plaintiff and over 100 other inmates contracting COVID-19. Defendants MDOC, Brandon Smith, and Burl Cain[1] have moved [47] for summary judgment; the plaintiff has responded, and the matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

---

[1] The plaintiff has also named the Carroll Montgomery Regional Correctional Facility as a defendant. As jails and prisons are not proper defendants in a § 1983 suit, this defendant will be dismissed with prejudice. *Campbell v. Thompson*, 2015 WL 5772535 (S.D. Miss.), *Simmons v. Harrison County Sheriffs Dept.*, 2015 WL 4742381 (S.D. Miss.)

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[2]

Janicholas Scott was placed in Mississippi Department of Corrections custody on June 6, 2016, to serve his current sentence. He was transferred from the Central Mississippi Correctional Facility ("CMCF") to the Carroll Montgomery Regional Correctional Facility ("Carroll Montgomery RCF") on January 23, 2019. According to Scott, over fifty inmates were transported from CMCF to Carroll Montgomery RCF on September 9 and 10 of 2020. Doc. 1 at 4. He alleges that the inmates were not quarantined before being housed with the general population at Carroll Montgomery RCF. *Id.* As a result, over 110 inmates tested positive for Covid-19, including Scott. *Id.*

To address the COVID-19 pandemic and prevent the spread of the virus inside state facilities, MDOC enacted a series of protective measures beginning in March of 2020 to the present. Scott claims that in September of 2020, "[t]his state was under a mandatory policy of no movements according to Commissioner Burl Cain." [1] at 4. Hence, according to the plaintiff, MDOC violated

---

[2] For the purposes of the instant memorandum opinion, the court will assume that the plaintiff's factual allegations are true.

- 3 -

safety protocols and agreements in place by transporting inmates from CMCF to Carroll Montgomery on September 9th and 10th.

## Eleventh Amendment Immunity

The Eleventh Amendment prohibits lawsuits in federal court against a state actor without the state's consent. *Brooks v. George County, Mississippi*, 84 F.3d 157, 168 (5th Cir. 1996). The Eleventh Amendment incorporates common law principles of sovereign immunity and ensures that the judicial power established by Article III does not confer jurisdiction over suits against non-consenting states. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Ex parte Ayers*, 123 U.S. 443, 508 (1887). "The amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

"[E]ven though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Suits against state agencies or officials which ultimately seek monetary recovery from state funds are barred by the Eleventh Amendment. *Id.* Thus, state officials are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). State officials enjoy the same Eleventh Amendment immunity afforded the state because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). In addition, states, as well as their arms and officials, are not "persons" who can be held liable under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). This court has recognized that official capacity claims

brought against the MDOC Commissioner and prison wardens are barred under the Eleventh Amendment. *See Wilkins v. Mississippi Dep't of Corr.*, No. 4:17-CV-137-SA-DAS, 2020 WL 3490063, at *3 (N.D. Miss. June 26, 2020).

Congress may abrogate state sovereign immunity when it unequivocally intends to do so and acts under a valid grant of constitutional authority. *Tennessee v. Lane*, 541 U.S. 509, 509–10 (2004); *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). However, § 1983 has not abrogated Eleventh Amendment immunity, and the State of Mississippi has not waived it. *Hines v. Mississippi Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000) (Congress has not chosen to abrogate the states' immunity for suits under §§ 1981, 1983, and 1985); Miss. Code. Ann. § 11-46-5(4) (preserving Mississippi's Eleventh Amendment immunity). For these reasons, Scott's claims for monetary damages against Commissioner Burl Cain and Warden Brandon Smith in their official capacities must be dismissed, as these defendants are state officials cloaked with Eleventh Amendment immunity.[3]

The single exception to Eleventh Amendment immunity is suits against state actors in their official capacities for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). "This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). A state official may be sued in his or her official capacity for injunctive relief under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky*, 473 U.S. at 167, n. 14 (1985)

---

[3] In addition, these defendants (in their official capacities) must be dismissed; as representatives of the State, they are not "person[s]" within the meaning of 42 U.S.C. § 1983. *Will, supra*. The plaintiff's claims against these defendants in their official capacities must thus be dismissed for that reason, as well.

(citing *Ex parte Young*, 209 U.S. at 159–160). One requirement for the applicability of *Ex Parte Young*, however, is that a complaint must allege that the defendant is currently violating federal law, not simply that the defendant has done so in the past. *See Green v. Mansour*, 474 U.S. 64, 71–73 (1985).

The plaintiff cannot show an ongoing violation of federal law at Carroll Montgomery RCF. He alleges that officials there violated and ignored the health and safety protocols in place. However, COVID-19 policies at the prison have changed, and the 2022 polices are substantially different from those in place in September and October of 2020. Hence, Scott's request for prospective injunctive relief has become moot.[4]

## Qualified Immunity

The defendants in this case are also cloaked with qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir. 1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable

---

[4] The latest update for confirmed inmate cases of COVID-19 (dated June 9, 2022) reveals that Carroll Montgomery RCF has no active cases. Indeed, as of that date there was only *one* active case of COVID-19 throughout all facilities housing MDOC inmates.
https://www.mdoc.ms.gov/Documents/covid-19/Inmates%20cases%20chart.pdf (last visited September 19, 2022).

official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Though Scott names Burl Cain and Brandon Smith as defendants, he has not alleged that they personally participated in the alleged violation: that "prison officials refused to quarantine these inmates and soon after . . . over 80% of inmate population at Carrol Montgomery was infected with the coronavirus." Doc. 1 at 4, 10. He neither names the prison officials who allegedly refused to quarantine the incoming inmates nor states any facts showing that the defendants in this case had any personal involvement in the September 2020 transfer. Neither does the plaintiff offer evidence to show that MDOC deviated from its COVID-19 prevention protocols during the transfer.

In March of 2020, MDOC enacted a protocol temporarily suspending inmate transfers from county jails to MDOC facilities, though the protocol permitted transfers between MDOC facilities under limited circumstances. *See* Exhibit "B," MDOC Press Release, March 12, 2020. In April of 2020, this transfer protocol was extended to suspend all county jail transfers and continued to limit the transfer of inmates between MDOC institutions, including intra-facility movement, for 30 days. *See* Exhibit "C." In September and October of 2020, existing MDOC COVID-19 preventative measures limited inmate transfers to those deemed necessary. *See* Exhibit "D," MDOC Press Release, May 29, 2020. This protocol did not, however, prohibit the transfer of inmates in MDOC custody between facilities. Scott also provides no proof that the inmates were not quarantined. Though he claims that

the inmates were not quarantined at Carrol Montgomery RCF before being housed with the general population, the transfer policy in place provided that inmates would be quarantined *at the transferring facility* (not the receiving facility) prior to being moved. Scott has neither shown nor alleged that CMCF staff failed to quarantine the inmates prior to their transfer to Carrol Montgomery.[5]

Scott has alleged no facts showing that the defendants were personally involved in the decisions regarding quarantine during his transfer. Further, he has alleged no facts to show that any staff deviated from MDOC policy regarding his transfer. Thus, he has not shown that the defendants' actions were objectively unreasonable.

### No Allegation of the Violation of a Clearly Established Constitutional Right

To be liable under the Eighth Amendment, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Lawson v. Dallas Cnty.*, 286 F.3d 257,

---

[5] In his response [51] to the instant motion for summary judgment, Scott states that neither he nor the other inmates being transferred were quarantined at CMCF (the sending facility) prior to the move. He also discusses the various MDOC COVID protocols in place and his belief that they were violated. However, his response was neither notarized nor submitted under penalty of perjury as set forth in 28 U.S.C.A. § 1746. Such unsworn materials are not competent summary judgment evidence:

> Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials.

*Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981). As discussed below, however, even if Scott's response materials contained proper summary judgment evidence, his claims would nonetheless fail. The defendants cannot be held liable under § 1983 solely for failure to follow state rules or regulations, and the defendants' actions were objectively reasonable under the circumstances.

262 (5th Cir. 2002) ("The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it.")

Even if the defendants had deviated from MDOC's COVID-19 transfer protocol, the plaintiff's claim would fail, as "a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of [the Eighth Amendment], if constitutional minima are nevertheless met." *Williams v. Banks*, 956 F.3d 808, 812 (5th Cir. 2020) (quoting *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). The plaintiff's claim that the defendants failed to follow MDOC procedures does not constitute the violation of a clearly established right; as such, the defendants are entitled to qualified immunity as to this claim.

**Plaintiff's Claim Fails on the Merits**

The plaintiff's allegations also fail on the merits. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 (1984)). "Exposure to a serious communicable disease while under conditions of confinement can be actionable under the Eighth Amendment." *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 648, 659 (N.D. Miss. 2013) (citing *Helling v. McKinney*, 509 U.S. 25, 33–34, 113 (1993)). Thus, to be liable under the Eighth Amendment, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, supra,* at 837.

As to harm, infectious diseases (such as and COVID-19) can pose a risk of serious or fatal harm to prison inmates. For this reason, MDOC implemented protective measures to prevent the

spread of the virus within its facilities.[6] Scott does not allege that these measures were inadequate, and the many precautions MDOC put in place undermines Scott's claim that he faced a "substantial risk of serious harm" giving rise to "cruel and unusual punishment" because MDOC did not act to ensure the safety of its inmates. The plaintiff has offered no evidence that the defendants acted with deliberate indifference regarding his transfer from CMCF to Carroll Montgomery RCF. "The 'incidence of diseases or infections, standing alone,' do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.'" *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009)). Instead, the plaintiff must show a denial of a "basic human need[]." *Id.* The mere fact that Scott contracted COVID-19 while in MDOC custody does not show that prison officials evinced a wanton disregard for inmates' serious medical needs on the part of prison officials:

> The Eighth Amendment does not enact the CDC guidelines. Nor does it require [prisons] to . . . avoid the spread of COVID-19, and the failure to do so does not clearly evince a wanton disregard for any serious medical needs.

*Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)) (internal quotation omitted). The plaintiff has not shown that the defendants were deliberately indifference to his medical needs during his transfer between facilities.

**The Defendants' Actions Were Objectively Reasonable**

---

[6] These protective measures include quarantines, restricted inmate transfers, suspending transfers, suspending visitation, daily screening of faculty and staff, monitoring inmates for symptoms, routine screens and temperature checks, medical isolation in affected areas, providing masks, hand sanitizers, gloves, and antibacterial soap to inmates, sanitizing facilities regularly, increasing cleaning and disinfection practices, implementing social distancing, and sharing and posting COVID-19 information through MDOC facilities. *See* https://www.mdoc.ms.gov/Pages/COVID-19-Information-and-Updates.aspx.

Even if the plaintiff could show that the defendants had violated his constitutional rights, he has not shown that the right was clearly established at the time of the challenged conduct. To decide this issue, the court must consider whether the defendants' actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendants' actions must have been readily apparent from sufficiently similar situations (not necessarily identical situations). *Id.* at 236–37. Further, an official's actions must be judged considering the circumstances that confronted him, without the crystal clarity of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

The standard of conduct to determine qualified immunity turns on "reasonableness." "[Q]ualified immunity affords 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 384. (*See also Malley*, 475 U.S. at 341 (if officers of reasonable competence could disagree on the issue, immunity should be recognized); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff must allege facts demonstrating that no reasonable officer could have believed the challenged actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 456 (5th Cir. 2001).

The plaintiff has not met this burden. Mr. Scott asks this court to second-guess the decision to transfer him and other inmates from CMCF to Carroll Montgomery RCF. However, essentially every court confronting that question has "shown considerable reluctance to disturb measures taken by state

and local governments to respond to the [COVID-19] crisis." *Herrin v. Reeves*, No. 3:20CV263-MPM-RP, 2020 WL 5748090, at *1 (N.D. Miss. Sept. 25, 2020). Nonetheless, prison officials had reason to permit the transfer. CMCF had the highest inmate population in the state at the time, while Carroll Montgomery housed far fewer inmates.[7] The transfer demonstrates MDOC efforts to curtail the spread of the virus by alleviating overcrowding in a large prison environment and providing more space for distancing among inmates. An outbreak in a smaller prison housing hundreds of inmates would put fewer inmates at risk than an outbreak in a large prison housing thousands.

This court has recognized qualified immunity in the context of COVID-19 mitigation measures:

> The COVID-19 pandemic presents a grave and deadly threat to the public, and this was perhaps even more so during the early months of the crisis, when the events of this case took place. Just as with ... the destruction of an untouched building to stem the spread of a fire, the Defendant in this case was justified in its actions to stem the spread of the disease. Consequently, the Defendant is immune from liability for these specific actions.

*Underwood v. City of Starkville, Mississippi*, 538 F. Supp. 3d 667, 680 (N.D. Miss. 2021) (granting qualified immunity to government officials regarding the effect of COVID-19 restrictions on a private business). In light of the discussion above, the court cannot find that the decision to move the plaintiff and other inmates from a large prison to a small one to curtail the spread of a potentially deadly virus was objectively unreasonable. As such, the defendants in this case are cloaked with qualified immunity, and judgment will be entered in their favor.

---

[7] The average daily inmate population at CMCF was 3,030 in September of 2020 and 2,964 in October of 2020, while the average daily inmate population at Carroll Montgomery was 257 in September and 253 in October of that year. *See* Exhibit "E," *MDOC Daily Inmate Population*, attached. A copy of data can also be found online at: https://www.mdoc.ms.gov/Admin-Finance/Pages/Daily-Inmate-Population.aspx.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment will be entered in favor of the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 27th day of September, 2022.

*[signature]*
SENIOR U.S. DISTRICT JUDGE